IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| DEBRA SIMMONS, as Special Administratrix of the Estate of BERNARD SIMMONS, <br><br> Plaintiff, <br><br> -vs- <br><br> WARDEN KIM BUTLER, UNKNOWN ILLINOIS DEPARTMENT OF CORRECTIONS OFFICERS, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No.  16-294-SMY-PMF<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT BUTLER'S ANSWER AND AFFIRMATIVE DEFENSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

The Defendant, KIM BUTLER, by and through her attorney, Lisa Madigan, Attorney General for the State of Illinois, provides the following answer and affirmative defense directed to Plaintiff's first amended complaint [d/e 18]:

**Nature of this Action**

1. On or about November 19, 2014, David Sesson ("Sesson") and Bernard Simmons ("Simmons") were placed in the same cell in segregation at Menard Correctional Center. At that time Defendants knew that Sesson posed an unreasonable risk of harm to any inmate with whom he was celled. Hours later, Sesson brutally attacked and strangled Simmons to death.

> Answer: Defendant admits that David Sesson and Bernard Simmons shared a cell in segregation at Menard Correctional Center in November 2014. Defendant admits that Sesson strangled and killed Simmons. Defendant denies the remaining allegations contained in paragraph 1.

1

2. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Bernard Simmons' rights as secured by the United States Constitution.

> Answer: Defendant admits that the action was filed pursuant to 42 U.S.C. § 1983; however, Defendant denies that she violated the rights of Bernard Simmons and denies she is liable for any of the claims in this action.

## Jurisdiction and Venue

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367(a).

> Answer: Defendant admits that this Court has jurisdiction of this action.

4. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in this judicial district.

> Answer: Defendant admits that venue is proper in this judicial district.

## Parties

5. Plaintiff Debra Simmons ("Ms. Simmons") is the Special Administrator of the Estate of Bernard Simmons. She is a resident of the State of Illinois.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.

6. Defendant Kim Butler ("Defendant Butler") was at all times relevant to this litigation employed by the Illinois Department of Corrections ("IDOC") as the warden at Menard Correctional Center.

> Answer: Defendant admits that she is employed by IDOC as the Warden at Menard Correctional Center and held that position in November 2014.

7. Defendant Betsy Spiller ("Defendant Spiller") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

Answer: Defendant admits that Betsy Spiller was employed by IDOC at Menard Correctional Center during times relevant to this suit. Defendant denies Spiller was a correctional officer at Menard Correctional Center.

8. Defendant Rebecca Creason ("Defendant Creason") was at all times relevant to this litigation employed by the IDOC as a psychologist at Menard Correctional Center.

Answer: Defendant admits that Rebecca Creason was employed by IDOC as a psychologist at Menard Correctional Center during times relevant to this suit.

9. Defendant Joshua Schoenbeck ("Defendant Schoenbeck") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

Answer: Defendant admits that Joshua Schoenbeck was employed by IDOC as a correctional lieutenant at Menard Correctional Center during times relevant to this suit.

10. Defendant Roger Pelker ("Defendant Pelker") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

Answer: Defendant admits that Roger Pelker was employed by IDOC as a correctional sergeant at Menard Correctional Center during times relevant to this suit.

11. Defendant Anna Ewert ("Defendant Ewert") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

Answer: Defendant admits that Anna Ewert was employed by IDOC as a placement officer at Menard Correctional Center during times relevant to this suit.

12. Defendant Christopher McClure ("Defendant McClure") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

Answer: Defendant admits that Christopher McClure was employed by IDOC as a correctional officer at Menard Correctional Center during times relevant to this suit.

13. Defendant Frank Eovaldi ("Defendant Eovaldi") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

> Answer: Defendant admits that Frank Eovaldi was employed by IDOC as a correctional lieutenant at Menard Correctional Center during times relevant to this suit.

14. Defendant Kevin Murray ("Defendant Murray") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

> Answer: Defendant admits that Kevin Murry was employed by IDOC as a correctional sergeant at Menard Correctional Center during times relevant to this suit.

15. Defendants Unknown Illinois Department of Corrections Officers were at all times relevant to this litigation employed by the IDOC as correctional officers at Menard Correctional Center.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15.

16. All of the individually named defendants are sued in their individual capacity.

> Answer: Defendant admits that she may be sued in her individual capacity, but denies any liability.

17. All of the individually named defendants were at all times relevant to this litigation acting within the course and scope of their employment and under color of State law.

> Answer: Defendant admits that she acted within the course and scope of her employment and under the color of State law while performing her job duties. Defendant lacks knowledge or information sufficient to form a belief as to the remaining Defendants.

## **Factual Allegations**

18. Sesson was admitted to Menard Correctional Center in December of 2004, having been sentenced to life in prison for murder.

> Answer: Defendant admits that David Sesson was admitted to IDOC custody in December 2004 after being sentenced to natural life in prison pursuant to a murder conviction. Defendant admits that Sesson was placed in Menard Correctional Center in late December 2004.

4

19. Sesson had a history of violent, homicidal, and suicidal behavior in the IDOC.

Answer: Defendant lacks knowledge or information sufficient to form a belief as to Sesson's entire IDOC or mental health history.

20. On information and belief, Sesson also had a history of mental health issues and was treated with psychotropic medication.

Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21. On January 14, 2006, Sesson attempted to hang himself in his cell.

Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.

22. On October 22, 2006, Sesson assaulted another inmate in the dining room.

Answer: Defendant admits that Sesson's IDOC records show that he was disciplined for fighting another inmate in the dining room on October 22, 2006. Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of the fight.

23. On February 1, 2007, correctional officers discovered dangerous contraband in Sesson's cell, including a 2 inch piece of metal and an altered nail clipper.

Answer: Defendant admits that Sesson's IDOC records show that he was disciplined for having a straightened metal spring and an altered nail clipper on February 1, 2007.

24. On October 2, 2007, Sesson attacked his cellmate and was subsequently placed in segregation.

Answer: Defendant admits that Sesson's IDOC records show that he was disciplined for fighting on October 2, 2007, and that the discipline included three months segregation. Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of the fight.

25. On August 25, 2009, Sesson attacked his cellmate and was subsequently placed in segregation.

Answer: Defendant admits that Sesson's IDOC records show that he was disciplined for fighting on August 25, 2009, and that the discipline included three months segregation.

Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of the fight.

26. On October 13, 2011, Sesson attacked another inmate and was subsequently placed in segregation.

> Answer: Defendant admits that Sesson's IDOC records show that he was disciplined for fighting on October 13, 2011, and that the discipline included one month of segregation. Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of the fight.

27. On March 15, 2012, Sesson attacked his cellmate. Sesson pinned his cellmate to the floor and repeatedly struck him in the head with a closed fist. Sesson did not comply with orders from responding correctional officers to stop the assault.

> Answer: Defendant admits that Sesson's IDOC records show that he was disciplined for fighting and the assault of inmate Reynolds on March 15, 2012. Defendant also admits that IDOC records show Sesson was disciplined for disobeying a direct order. Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of the incident.

28. Sesson was subsequently placed in segregation. Due to his history of assaultive behavior and mental health issues, he was denied approval for double celling while in segregation.

> Answer: Defendant admits that Sesson was denied approval for double-celling in segregation on March 20, 2012; but Defendant lacks knowledge or information sufficient to form a belief as to the rationale.

29. On October 7, 2012, after being released back into general population, Sesson attacked his cellmate and was subsequently placed in segregation. Again, due to his history of assaultive behavior, Sesson was denied approval for double celling while in segregation.

> Answer: Defendant admits that Sesson's IDOC records show he was disciplined for assaulting inmate Curry and for fighting on October 7, 2012, and the discipline included one month of segregation. Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of the altercation. Defendant admits that Sesson was denied approval for double-celling in segregation on October 15, 2012; but Defendant lacks knowledge or information sufficient to form a belief as to the rationale.

6

30. On March 20, 2012, Sesson attacked his cellmate and was subsequently placed in segregation. Again, due to his history of assaultive behavior, Sesson was denied approval for double celling while in segregation.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to a fight on March 20, 2012. Defendant admits that Sesson's IDOC records show he was disciplined for fighting his cellmate on March 20, 2013, and the discipline included one month of segregation. Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of the altercation. Defendant admits that Sesson was denied approval for double-celling in segregation on March 21, 2013; but Defendant lacks knowledge or information sufficient to form a belief as to the rationale.

31. On November 7, 2014, Sesson attacked his cellmate by wrapping a television cord around his neck and strangling him.

> Answer: Defendant admits that Sesson's IDOC records show he was disciplined for assaulting inmate Goings by attempting to strangle him with a television cord on November 7, 2014. Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of the incident.

32. The inmate that Sesson strangled did not initially report the incident because he feared for his life.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32.

33. On or about November 11, 2014, Defendant Schoenbeck learned from confidential sources that Sesson had strangled his cellmate. Defendant Schoenbeck also learned from these sources that the cellmate did not fight back, and that Sesson only stopped because an individual walked by his cell and told him to "knock it off."

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33.

34. Disciplinary proceedings were initiated against Sesson, and he was once again placed in segregation.

> Answer: Defendant admits that disciplinary proceedings were initiated against Sesson and he was placed in segregation in November 2014.

35. Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, and Ewert knew about Sesson's violent history, including the fact that he had repeatedly attacked cellmates.

> Answer: Defendant denies the allegations contained in paragraph 35.

36. Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, and Ewert knew that Sesson had strangled his cellmate with a television cord on November 7, 2014.

> Answer: Defendant denies the allegations contained in paragraph 36.

37. Despite this knowledge, on November 18, 2014, Defendant Spiller recommended that Sesson be double celled while in segregation.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

38. Despite this knowledge, on November 19, 2014, Defendants Creason, and Schoenbeck recommended that Sesson be double celled while in segregation.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38.

39. Despite this knowledge, on November 19, 2014, Defendant Butler approved Sesson to be double celled while in segregation.

> Answer: Defendant denies the allegations contained in paragraph 39.

40. Despite this knowledge, on November 19, 2014, Defendant Pelker "screened" Sesson and Simmons, and determined that they were "compatible" for double celling.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40.

41. Despite this knowledge, on November 19, 2014, Defendant Ewert approved of Sesson and Simmons being placed in the same cell.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41.

42. Sesson and Simmons were therefore placed in the same cell on November 19, 2014.

> Answer: Defendant admits that records show Sesson was placed into cell 638 with Simmons on November 19, 2014. Defendant lacks knowledge or information sufficient to form a belief as to the circumstances of that placement.

43. On November 19, 2014, Simmons weighed approximately 150 pounds.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43.

44. On November 19, 2014, Sesson weighed approximately 280 pounds.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44.

45. Through the process of screening Sesson's "compatibility" to be celled with Simmons, Defendants Pelker and Ewert knew that Sesson was much larger than Simmons.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45.

46. Defendants Pelker and Ewert therefore knew that in the event Sesson attacked Simmons that Simmons would not be able to adequately defend himself.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.

47. Throughout his incarceration, Sesson reported to the IDOC correctional staff that he hated having cellmates and wanted to be in a cell by himself.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 47.

48. From the date Sesson was placed in segregation to when he was placed in a cell with Simmons, he informed Defendant Unknown Correctional Officers that he would fight the next inmate with whom he was celled.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48.

49. On November 19, 2014, Sesson informed Defendants McClure, Eovaldi, and Murray that he would harm his cellmate if he was not moved.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49.

50. Defendants McClure, Eovaldi, and Murray ignored Sesson, and did nothing to separate Simmons from Sesson.

> Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50.

51. On November 19, 2014, Sesson murdered Simmons by strangling him with a clothes line and then with a shoe lace.

> Answer: Upon information and belief, Defendant admits that Sesson admitted to murdering Simmons by attempting to strangle him with a clothesline and then strangling him with a boot string.

52. Sesson reported the murder by telling Defendant McClure, "My cellie is dead. I killed him after your 9 p.m. tour."

> Answer: Defendant admits that Sesson reported the murder to McClure. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52.

53. Sesson subsequently pled guilty to murdering Simmons, and was sentenced to an additional 40-year sentence in the Illinois Department of Corrections.

> Answer: Defendant admits that Sesson pleaded guilty to murdering Simmons in Randolph County, Illinois, and was sentenced to a 40-year sentence to run consecutive to his prior sentence.

**COUNT I**
**42 U.S.C. § 1983**
**8th Amendment – Cruel and Unusual Punishment**
**(All Individually Named Defendants)**

54. Each of the foregoing paragraphs is incorporated as if fully restated herein.

Answer: Defendant incorporates and re-states her prior answers to the allegations of the complaint.

55. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, and Ewert caused Sesson to be placed in a cell with Simmons.

Answer: Defendant denies the allegations contained in paragraph 55.

56. As described more fully above, Defendants McClure, Eovaldi, Murray, and Unknown Correctional Officers failed to separate Sesson from Simmons after Sesson made direct threats of harm against his next cellmate and/or Simmons.

Answer: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56.

57. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Ewert, McClure, Eovaldi, Murray, and Unknown Correctional Officers knew that Sesson posed a substantial risk to Simmons' life and safety.

Answer: Defendant denies the allegations contained in paragraph 57.

58. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Ewert, McClure, Eovaldi, Murray, and Unknown Correctional Officers created a substantial risk of serious harm to Simmons by placing and/or keeping him in a cell with Sesson.

Answer: Defendant denies the allegations contained in paragraph 58.

59. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Ewert, McClure, Eovaldi, Murray, and Unknown Correctional Officers failed to protect

Simmons from a substantial risk of serious harm by placing and/or keeping him in a cell with Sesson.

    Answer:  Defendant denies the allegations contained in paragraph 59.

    60.    The misconduct described in this Count was intentional and committed with deliberate indifference to Bernard Simmons' constitutional rights.

    Answer:  Defendant denies the allegations contained in paragraph 60.

    61.    The misconduct described in this Count constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

    Answer:  Defendant denies the allegations contained in paragraph 61.

    62.    As a direct and proximate result of Defendants' violation of Bernard Simmons constitutional rights, Bernard Simmons endured pain and suffering, mental anguish, and death.

    Answer:  Defendant denies the allegations contained in paragraph 62.

### Response to Plaintiff's Prayer for Relief

Defendant denies that Plaintiff is entitled to an award of compensatory damages, punitive damages, attorneys' fees, pre-judgment interest, post-judgment interest, or any other relief.

### Affirmative Defense

**Qualified Immunity**

At all times relevant to Plaintiffs' claims, the Defendant acted in good faith in the performance of her official duties without violating clearly established constitutional rights. Defendant is protected from liability by the doctrine of qualified immunity.

**Jury Demand**

Defendant demands trial by jury.

WHEREFORE, Defendant respectfully requests that this Court enter judgment in her favor.

Respectfully submitted,

KIM BUTLER,

    Defendant,

LISA MADIGAN, Attorney General,
State of Illinois,

    Attorney for Defendant,

BY:  s/ Lisa Cook
      Lisa Cook
      Assistant Attorney General

Lisa Cook, #6298233
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 785-4555
Email: lcook@atg.state.il.us

Of Counsel.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| DEBRA SIMMONS, as Special Administratrix of the Estate of BERNARD SIMMONS, | ) ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) No. 16-294-SMY-PMF ) |
| WARDEN KIM BUTLER, UNKNOWN ILLINOIS DEPARTMENT OF CORRECTIONS OFFICERS, | ) ) ) ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2016, I electronically filed the foregoing *DEFENDANT BUTLER'S ANSWER AND AFFIRMATIVE DEFENSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Douglas H. Johnson     attorneys@zellnerlawoffices.com
Kathleen T. Zellner     Kathleen.zellner@gmail.com

and I hereby certify that on June 7, 2016, I mailed by United States Postal Service, the document to the following non-registered participant:

NONE

s/ Lisa Cook_____
LISA COOK
Assistant Attorney General

Lisa Cook, #6298233
Assistant Attorney General
General Law Bureau
Office of the Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 782-9094  Phone
(217) 524-5091  Fax
lcook@atg.state.il.us