IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| DEBRA SIMMONS, as Special Administrator of the Estate of BERNARD SIMMONS, deceased, <br><br> Plaintiff, <br><br> v. <br><br> KIM BUTLER, in her individual capacity, BETSY SPILLER, in her individual capacity, REBECCA CREASON, in her individual capacity, JOSEPH SCHOENBECK, in his individual capacity, ROGER PELKER, in his individual capacity, ANNA EWERT, in her individual capacity, CHRISTOPHER McCLURE, in his individual capacity, FRANK EOVALDI, in his individual capacity, KEVIN MURRAY, in his individual capacity, JAMES BEST, in his individual capacity, UNKOWN ILLINOIS DEPARTMENT OF CORRECTIONS OFFICERS, in their individual capacities, and the ILLINOIS DEPARTMENT OF CORRECTIONS, <br><br> Defendants. | Case No. 16-cv-294-SMY-PMF |

**SECOND AMENDED COMPLAINT AT LAW**

Now Comes Plaintiff, DEBRA SIMMONS, as Special Administrator of the Estate of BERNARD SIMMONS, deceased, and complaining of Defendants, KIM BUTLER, BETSY SPILLER, REBECCA CREASON, JOSEPH SCHOENBECK, ROGER PELKER, ANNA EWERT, CHRISTOPHER McCLURE, FRANK EOVALDI, KEVIN MURRAY, JAMES BEST, UNKNOWN ILLINOIS

1

DEPARTMENT OF CORRECTIONS OFFICERS, and the ILLINOIS DEPARTMENT OF CORRECTIONS, hereby states as follows:

### NATURE OF THIS ACTION

1. On or about November 19, 2014, David Sesson ("Sesson") and Bernard Simmons ("Simmons") were placed in the same cell in segregation at Menard Correctional Center. At that time Defendants knew that Sesson posed an unreasonable risk of harm to any inmate with whom he was celled. Hours later, Sesson brutally attacked and strangled Simmons to death.

2. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Bernard Simmons' rights as secured by the United States Constitution.

### JURISDICTION AND VENUE

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367(a).

4. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in this judicial district.

### PARTIES

5. Plaintiff Debra Simmons ("Ms. Simmons") is the Special Administrator of the Estate of Bernard Simmons. She is a resident of the State of Illinois.

6. Defendant Kim Butler ("Defendant Butler") was at all times relevant to this litigation employed by the Illinois Department of Corrections ("IDOC") as the warden at Menard Correctional Center.

7.     Defendant Betsy Spiller ("Defendant Spiller") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

8.     Defendant Rebecca Creason ("Defendant Creason") was at all times relevant to this litigation employed by the IDOC as a psychologist at Menard Correctional Center.

9.     Defendant Joshua Schoenbeck ("Defendant Schoenbeck") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

10.    Defendant Roger Pelker ("Defendant Pelker") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

11.    Defendant Anna Ewert ("Defendant Ewert") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

12.    Defendant Christopher McClure ("Defendant McClure") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

13.    Defendant Frank Eovaldi ("Defendant Eovaldi") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center

14. Defendant Kevin Murray ("Defendant Murray") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

15. Defendant James Best ("Defendant Best") was at all times relevant to this litigation employed by the IDOC as a correctional officer at Menard Correctional Center.

16. Defendants Unknown Illinois Department of Corrections Officers were at all times relevant to this litigation employed by the IDOC as correctional officers at Menard Correctional Center.

17. All of the individually named defendants are sued in their individual capacity.

18. All of the individually named defendants were at all times relevant to this litigation acting within the course and scope of their employment and under color of State law.

19. Defendant Illinois Department of Corrections ("Defendant IDOC") is a department of State government in the State of Illinois.  Defendant IDOC is sued for its unconstitutional policies, procedures, and/or practices which were the moving force behind Simmons' injuries as alleged herein.

### FACTUAL ALLEGATIONS

*Sesson's history of violence towards cellmates*

20. Sesson was admitted to Menard Correctional Center in December of 2004, having been sentenced to life in prison for murder.

21. Sesson had a history of violent, homicidal, and suicidal behavior in the IDOC.

22. On information and belief, Sesson also had a history of mental health issues and was treated with psychotropic medication.

23. On January 14, 2006, Sesson attempted to hang himself in his cell.

24. On October 22, 2006, Sesson assaulted another inmate in the dining room.

25. On February 1, 2007, correctional officers discovered dangerous contraband in Sesson's cell, including a 2 inch piece of metal and an altered nail clipper.

26. On October 2, 2007, Sesson attacked his cellmate and was subsequently placed in segregation.

27. On August 25, 2009, Sesson attacked his cellmate and was subsequently placed in segregation.

28. On October 13, 2011, Sesson attacked another inmate and was subsequently placed in segregation.

29. In approximately February, 2012, after applying for protective custody, Sesson reported to the IDOC Administrative Review Board that he feared for his life, stating, "I have burned bridges with too many people.  I would like to get out of here."

30. On March 15, 2012, Sesson attacked his cellmate.  Sesson pinned his cellmate to the floor and repeatedly struck him in the head with a closed fist.

Sesson did not comply with orders from responding correctional officers to stop the assault.

31. Sesson was subsequently placed in segregation. Due to his history of assaultive behavior and mental health issues, he was denied approval for double celling while in segregation.

32. On October 7, 2012, after being released back into general population, Sesson attacked his cellmate and was subsequently placed in segregation. Again, due to his history of assaultive behavior, Sesson was denied approval for double celling while in segregation.

33. On March 20, 2012, Sesson attacked his cellmate and was subsequently placed in segregation. Again, due to his history of assaultive behavior, Sesson was denied approval for double celling while in segregation.

34. On November 7, 2014, Sesson attacked his cellmate by wrapping a television cord around his neck and strangling him.

35. The inmate that Sesson strangled did not initially report the incident because he feared for his life.

36. On or about November 11, 2014, Defendant Schoenbeck learned from confidential sources that Sesson had strangled his cellmate. Defendant Schoenbeck also learned from these sources that the cellmate did not fight back, and that Sesson only stopped because an individual walked by his cell and told him to "knock it off."

37. Disciplinary proceedings were initiated against Sesson, and he was once again placed in segregation.

### *Defendants approve Sesson for double celling and place him with in a cell with Simmons*

38. Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Ewert, and Best knew about Sesson's violent history, including the fact that he had repeatedly attacked cellmates.

39. Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Ewert, and Best knew that Sesson had strangled his cellmate with a television cord on November 7, 2014.

40. Despite this knowledge, on November 18, 2014, Defendant Spiller recommended that Sesson be double celled while in segregation.

41. Despite this knowledge, on November 19, 2014, Defendants Creason, and Schoenbeck recommended that Sesson be double celled while in segregation.

42. Despite this knowledge, on November 19, 2014, Defendant Butler approved Sesson to be double celled while in segregation.

43. Despite this knowledge, on November 19, 2014, Defendants Pelker and Best"screened" Sesson and Simmons, and determined that they were "compatible" for double celling.

44. Despite this knowledge, on November 19, 2014, Defendant Ewert approved of Sesson and Simmons being placed in the same cell.

45. Sesson and Simmons were therefore placed in the same cell on November 19, 2014.

### *Defendants knew that Sesson was much larger than Simmons*

46. On November 19, 2014, Simmons weighed approximately 150 pounds.

47. On November 19, 2014, Sesson weighed approximately 280 pounds.

48. Through the process of screening Sesson's "compatibility" to be celled with Simmons, Defendants Pelker, Best, and Ewert knew that Sesson was much larger than Simmons.

49. Defendants Pelker, Best, and Ewert therefore knew that in the event Sesson attacked Simmons that Simmons would not be able to adequately defend himself.

### *Sesson warns the IDOC correctional staff that he will harm his cellmate*

50. Throughout his incarceration, Sesson reported to the IDOC correctional staff that he hated having cellmates and wanted to be in a cell by himself.

51. From the date Sesson was placed in segregation to when he was placed in a cell with Simmons, he informed Defendant Unknown Correctional Officers that he would fight the next inmate with whom he was celled.

52. On November 19, 2014, Sesson informed Defendants McClure, Eovaldi, and Murray that he would harm his cellmate if he was not moved.

53. Defendants McClure, Eovaldi, and Murray ignored Sesson, and did nothing to separate Simmons from Sesson.

*Sesson murders Simmons*

54. On November 19, 2014, Sesson murdered Simmons by strangling him with a clothes line and then with a shoe lace.

55. Sesson reported the murder by telling Defendant McClure, "My cellie is dead. I killed him after your 9 p.m. tour."

56. Sesson subsequently pled guilty to murdering Simmons, and was sentenced to an additional 40-year sentence in the Illinois Department of Corrections.

## COUNT I

### 42 U.S.C. § 1983

### 8th Amendment – Cruel and Unusual Punishment

### (All Individually Named Defendants)

57. Each of the foregoing paragraphs is incorporated as if fully restated herein.

58. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Best, and Ewert caused Sesson to be placed in a cell with Simmons.

59. As described more fully above, Defendants McClure, Eovaldi, Murray, and Unknown Correctional Officers failed to separate Sesson from Simmons after Sesson made direct threats of harm against his next cellmate and/or Simmons.

60. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Best, Ewert, McClure, Eovaldi, Murray, and Unknown

Correctional Officers knew that Sesson posed a substantial risk to Simmons' life and safety.

61. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Best, Ewert, McClure, Eovaldi, Murray, and Unknown Correctional Officers created a substantial risk of serious harm to Simmons by placing and/or keeping him in a cell with Sesson.

62. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Best, Ewert, McClure, Eovaldi, Murray, and Unknown Correctional Officers failed to protect Simmons from a substantial risk of serious harm by placing and/or keeping him in a cell with Sesson.

63. The misconduct described in this Count was intentional and committed with deliberate indifference to Bernard Simmons' constitutional rights.

64. The misconduct described in this Count constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

65. As a direct and proximate result of Defendants' violation of Bernard Simmons constitutional rights, Bernard Simmons endured pain and suffering, mental anguish, and death.

## COUNT II

## 42 U.S.C. § 1983

## 14th Amendment Due Process – State-Created Danger

## (All Individually Named Defendants)

66. Each of the foregoing paragraphs is incorporated as if fully restated herein.

67. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Best, and Ewert created and/or increased the danger to Simmons by placing him in a cell with Sesson.

68. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Best, and Ewert failed to protect Simmons.

69. As described more fully above, Defendants Butler, Spiller, Creason, Schoenbeck, Pelker, Best, and Ewert's failure to protect Simmons shocks the conscience.

70. The misconduct described in this Count was intentional and committed with deliberate indifference to Bernard Simmons' constitutional rights.

71. The misconduct described in this Count violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

72. As a direct and proximate result of Defendants' violation of Bernard Simmons constitutional rights, Bernard Simmons endured pain and suffering, mental anguish, and death.

**P**RAYER FOR **R**ELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants Kim Butler, Betsy Spiller, Rebecca Creason, Joseph Schoenbeck, Roger Pelker, James Best, Anna Ewert, Christopher McClure, Frank Eovaldi, Kevin Murray, and Unknown Illinois Department of Corrections Officers, awarding compensatory damages, punitive damages, attorneys' fees, pre-judgment interest, post-judgment interest, and any other relief this Court deems just and appropriate.

**J**URY **D**EMAND

Plaintiff hereby demands trial by jury as to all issues so triable under Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, Illinois  60515
Phone:  630-955-1212
Fax:  630-955-1111
Email:  kathleen.zellner@gmail.com

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on November 21, 2016, she filed with the Clerk of Court the foregoing Plaintiff's Motion for Leave to File Second Amended Complaint using the CM/ECF system, which will send notification of such filing to the following:

        Melissa Jennings        mjennings@atg.state.il.us

Date:  November 21, 2016    /s/ Kathleen T. Zellner
                                    Kathleen T. Zellner
                                    Kathleen T. Zellner & Associates, P.C.
                                    1901 Butterfield Road, Suite 650
                                    Downers Grove, Illinois  60515
                                    Phone:  630-955-1212
                                    Fax:  630-955-1111
                                    Email:  kathleen.zellner@gmail.com